IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>ROCK STRUCTURES EXCAVATING, INC.,<br><br>     Debtor. | Bankruptcy No. 10-20576 JTM<br>(Chapter 7) |
| DAVID L. MILLER, Chapter 7 Trustee,<br><br>     Plaintiff,<br><br><br><br><br>vs.<br><br>ENVIRO CARE, INC.; ROCK<br>STRUCTURES EXCAVATION, INC.;<br>ASSOCIATED INVESTMENTS, LLC; JOHN<br>DOES 1-10,<br><br>     Defendants. | MEMORANDUM DECISION AND<br>ORDER DENYING WITHOUT<br>PREJUDICE DEFENDANTS'<br>MOTION TO WITHDRAW<br>REFERENCE<br><br><br>Case No. 2:12-CV-856 TS |

This matter is before the Court on Defendants Enviro Care, Inc. ("Enviro Care"), Rock

Structures Excavation, Inc. ("Rock Structures"), and Associated Investments, LLC's

("Associated") (collectively "Defendants") Joint Motion to Withdraw the Reference of

Adversary Proceeding 10-2687.[1]  For the reasons discussed more fully below, the Court will

deny Defendants' Motion without prejudice to it being re-raised pursuant to the terms set out

below.

---

[1] Docket No. 2.

I. BACKGROUND

This motion arises out of the Chapter 7 bankruptcy proceedings of Rock Structures Excavating, Inc.[2] ("Debtor").  The underlying Adversary Proceeding was brought by David L. Miller, duly appointed Trustee ("Trustee").  The Trustee filed his Complaint on September 7, 2010.

In his Complaint, the Trustee brought the following Claims for Relief: (1) conversion of Debtor's property and funds—turnover of property to the estate; (2) matured debt owed to Debtor—turnover of property to the estate; (3) unauthorized use of Debtor's lines of credit— turnover of property to the estate; (4) avoidance and recovery of fraudulent transfers—Utah Code Ann. § 25-6-1 as made applicable by 11 U.S.C. § 544(b); (5) declaratory judgment and avoidance and recovery of fraudulent transfers—11 U.S.C. § 548(a)(1)(A); (6) declaratory judgment and avoidance and recovery of fraudulent transfers—11 U.S.C. § 548(a)(1)(B); (7) quantum meruit—unjust enrichment; (8) breach of contract; and (9) successor liability.

The bankruptcy docket reflects that Defendants made their first appearance before the bankruptcy court by filing their Answer on October 26, 2010.[3]  Over the course of the next twenty-three months, Defendants filed a Notice of Initial Disclosures as Per Bankruptcy Rule 7026(a)(1),[4] an Answer to Discovery Materials,[5] a Motion for Contempt/Sanctions Against Trustee,[6] and a Motion for Summary Judgment.[7]  Defendants' Contempt/Sanctions and

---

[2] Not to be confused with Defendant, as the two entities' names are similar.

[3] Bankruptcy Docket No. 22.

[4] Bankruptcy Docket No. 28.

[5] Bankruptcy Docket No. 31.

[6] Bankruptcy Docket No. 33.

Summary Judgment Motions were denied on June 21, 2012.[8]  The bankruptcy court also granted

the Trustee's Motion for Order Allowing Withdrawal and Amendment of Deemed Admissions

on that same day.[9]  Nearly three months later, on September 6, 2012, Defendants filed their

Motion to Withdraw the Reference.

## II. DISCUSSSION

Defendants argue that withdrawal is mandated based on the recent Supreme Court case of

*Stern v. Marshall*[10] and, in the alternative, that this Court has cause to permissively withdraw the

reference pursuant to 28 U.S.C. § 157(d).  The Trustee argues that the Motion should be denied

because (A) the Motion is untimely, (B) cause does not exist for which this matter may be

withdrawn, and (C) *Stern* does not preclude the bankruptcy court from hearing the Adversary

Proceeding.

A.       TIMELINESS

Pursuant to 28 U.S.C. § 157(d), this Court "may withdraw, in whole or in part, any case

or proceeding referred under this section . . . on timely motion of any party, for cause shown."

Under DUCivR 83-7.4(c)(2), "an original defendant . . . seeking to withdraw the reference of an

adversary proceeding, must file a Withdrawal Motion within twenty-one (21) days after entering

an appearance in the adversary proceeding."

---

[7] Bankruptcy Docket No. 46.

[8] Bankruptcy Docket Minute Entry 6/21/2012.

[9] *Id.*

[10] 131 S. Ct. 2594 (2011).

Defendants asserted at oral argument that their denial in paragraph seven of their Answer[11] was sufficient to warrant a timely objection to the bankruptcy court's jurisdiction.  The local rule, however, is very clear.  Defendants were required to file a "timely motion"[12] "within twenty-one (21) days after entering an appearance in the adversary proceeding."[13]  Thus, Defendants' Motion is untimely under the plain language of the local rule and the Court will deny the Motion on that ground.

B.      CAUSE

Defendants also challenge the bankruptcy court's jurisdiction by arguing that cause exists for which the Court "shall"[14] withdraw the Adversary Proceeding from the bankruptcy court. The Trustee maintains that no such cause exists.

Pursuant to 28 U.S.C. § 157(d), the district court may permissively "withdraw, in whole or in part, any case or proceeding referred under this section . . . for cause shown."  In determining whether cause exists, this Court considers the following factors: (1) whether the claim is a core proceeding; (2) judicial economy, convenience, and the bankruptcy court's knowledge of the facts; (3) uniformity and efficiency of bankruptcy administration; (4) reduction of forum shopping and confusion; (5) conservation of debtor and creditor resources; and (6) whether the parties have requested a jury trial.[15]

---

[11] Bankruptcy Docket No. 22, at 3.

[12] 28 U.S.C. § 157(d).

[13] DUCivR 83-7.4(c)(2).

[14] Docket No. 3, at 5.

[15] *W. Utah Copper Co. v. Bridge Loan Capital Fund, LP*, No. 2:10-CV-1039 TS, 2011 WL 52511, at *1 (D. Utah Jan. 6, 2011) (citing *In re Leedy Mort. Co.*, 62 B.R. 303, 306 (E.D. Pa. 1986); *In re Sevco*, 143 B.R. 114, 117 (N.D. Ill. 1992)).

The parties dispute which of the nine claims are core and which are non-core.  Though there are readily recognizable non-core claims alleged by the Trustee, the Court will refrain from making this determination, as the bankruptcy court is better suited and is given statutory authority to do so.

The Court finds that keeping the Adversary Proceeding in bankruptcy court would best preserve judicial economy and promote convenience.  While it may be efficient to have one final arbiter deciding all core and non-core issues,[16] this would not preclude a bankruptcy judge from hearing and entering findings of fact and conclusions of law on all claims.  Even when withdrawal is warranted for cause—i.e., when a party established a right to a jury trial—"a district court may conserve judicial resources by permitting the bankruptcy court to conduct discovery and rule on pre-trial motions."[17]

The Court also finds that efficiency and uniformity of the bankruptcy administration favor denial of the Motion to Withdraw in this case because the issues depend on the bankruptcy court's expertise.[18]  The bankruptcy court has become familiar with the facts, parties, and posture of the case over the last two and a half years.[19]  Withdrawal would cause unnecessary delay in the eventual payout to Debtor's creditors since a significant portion of Debtor's potential assets are at issue in this proceeding.  The Trustee's claims also involve matters routinely addressed by the bankruptcy court.

---

[16] *See Parks v. Persels & Assocs., LLC (In re Ballway)*, No. 10-13945, 2012 WL 3595091, at *3 (D. Kan. July 19, 2012).

[17] *Nattel, LLC v. Oceanic Digital Commc'ns (In re Nattel, LLC),* No. 06-50421, 2010 WL 2977133, at *2 (D. Conn. July 22, 2010).

[18] See *In re Wahl*, BR 12-10491-R, 2012 WL 5199630, at *3 (N.D. Okla. Oct. 22, 2012).

[19] Docket No. 4, at 7.

The issue of forum shopping and confusion is another factor that weighs against withdrawal of the bankruptcy reference. Defendants have received several adverse rulings in the bankruptcy court. This Court finds no reason why Defendants should be permitted to relitigate the same issues in the district court. While the Court is not persuaded that Defendants have filed this Motion in bad faith, the Court finds that denial of the Motion will limit forum shopping and prevent confusion.

The Court further believes that denial of this Motion would conserve debtor and creditor resources. Granting withdrawal at such a late stage in the Adversary Proceeding would increase costs to the Trustee, as he would have to "relitigate and rehash issues that have previously been decided by the bankruptcy court."[20] Conserving these costs would increase the bankruptcy court's ability to efficiently administer the Debtor's estate.

The final factor to be considered is whether the parties have requested a jury trial. It is clear from the record that Defendants have not requested trial by jury. Thus, this factor favors denial of Defendants' Motion.

Based on consideration of all the above-listed factors, the Court finds there is insufficient cause to permissively withdraw the bankruptcy reference under § 157(d).

C.      CONSTITUTIONAL CONSIDERATIONS

Under 28 U.S.C. § 157, once a bankruptcy proceeding is referred to the bankruptcy court, a bankruptcy judge "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments."[21] Bankruptcy judges are charged with determining "whether a proceeding is a core

---

[20] *Id.* at 8.

[21] 28 U.S.C. § 157(a)-(b)(1).

[or non-core] proceeding," by motion of either the judge or a party in the proceeding.[22]  A

bankruptcy judge has authority to enter a final order on all core proceedings.[23]  In the event that a

bankruptcy judge finds that a proceeding is not core—or merely related to a case under title 11—

the bankruptcy judge is still authorized to hear the proceeding and "shall submit proposed

findings of fact and conclusions of law to the district court."[24]  If any party objects to these

findings and conclusions, the district court will review the proposals de novo and enter a final

order or judgment accordingly.[25]

Defendants claim that under the Supreme Court's holding in *Stern v. Marshall*,

bankruptcy courts are no longer constitutionally able to exercise jurisdiction over adversary

proceedings under 28 U.S.C. § 157.[26]  According to Defendants, *Stern* essentially stripped

bankruptcy courts of their authority to adjudicate many core claims.  This argument raises

serious constitutional questions "as to whether the Bankruptcy Court would have had the

authority, absent the parties' consent, to enter orders and judgment in the Adversary

Proceeding."[27]  Therefore, the Court will consider these issues, despite Defendants' Motion

being untimely.

---

[22] *Id.* § 157(c)(1).

[23] *Id.* § 157(b)(1).

[24] *Id.* § 157(c)(1).

[25] *Id.*

[26] Docket No. 3, at 4.

[27] *Mercury Cos. v. FNF Sec. Acquisition, Inc.*, 460 B.R. 778, 781 (D. Colo. 2011).

"Any analysis of the bankruptcy courts' post-*Stern* authority to hear matters must begin, out of necessity, with *Stern* itself."[28]  In *Stern*, the Supreme Court addressed "whether a bankruptcy court judge . . . had the authority under 28 U.S.C. § 157 and Article III to enter final judgment" on an estate's state law counterclaim against a creditor who entered a proof of claim against the estate.[29]  The estate's counterclaim was "a [single] state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy."[30]  The claim was also not related to any government action, nor did the creditor give his consent to adjudication of the claims by the bankruptcy judge.[31]

The Court held that the bankruptcy court had statutory authority to enter a final judgment on a state law counterclaim, but was without constitutional authority to enter a final judgment under Article III.  This was because "the [b]ankruptcy [c]ourt . . . exercised the 'judicial Power of the United States'" to enter a final judgment that did not "depend[] upon any agency regulatory scheme."[32]  In other words, "[w]hen a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789, and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts."[33]

---

[28] *KHI Liquidation Trust v. Wisenbaker Builder Servs. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 901 (Bankr. N.D. Ill. 2012).

[29] *Stern*, 131 S. Ct. at 2595.

[30] *Id.* at 2611.

[31] *Id.* at 2613–15.

[32] *Id.* at 2611, 2616.

[33] *Id.* at 2609 (internal quotation marks and citation omitted).

In concluding its decision, the Supreme Court clarified that the question in *Stern* was a "narrow" one where "Congress, in one isolated respect, exceeded the limitation in the Bankruptcy Act."[34]  The Court acknowledged that it did "not think the removal of counterclaims such as [the plaintiff's] from core bankruptcy jurisdiction meaningfully change[d] the division of labor in the statute."[35]  Thus, it is clear that under *Stern* bankruptcy courts can no longer enter a final judgment on state law counterclaims brought under § 157(b)(2)(C).  Confusion has arisen, however, over the scope of *Stern*'s application to limit a bankruptcy judge's authority to enter final judgments on other traditional and enumerated core proceedings.

Defendants would have this Court interpret *Stern* broadly and find that bankruptcy courts lack constitutional authority to hear most core claims brought under § 157.  They claim that "28 U.S.C. § 157 is unconstitutional as it gives bankruptcy courts authority beyond the scope of their limited jurisdiction."[36]  Defendants assert that since the entire Adversary Proceeding is non-core, the bankruptcy court is not authorized to enter a final order or judgment in this matter absent the parties' consent.[37]  According to Defendants, the Trustee's claims are also state law, non-core claims because they are "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789."[38]  The Trustee contends that while the majority of its claims are not core,

---

[34] *Id.* at 2620.

[35] *Id.* at 2620.

[36] Docket No. 3, at 4.

[37] *Id.* at 4, 6.

[38] *Stern*, 131 S. Ct. at 2609.

withdrawal is unwarranted because "the Bankruptcy Court may still hear the case and enter

proposed findings of fact and conclusions of law."[39]

Confusion over *Stern*'s reach stems from the Supreme Court's "attempt to reconcile *Stern*

with its earlier holding[]"[40] in *Granfinanciera, S.A. v. Nordberg*.[41] *Granfinanciera* was

concerned with "whether a person who has not submitted a claim against a bankruptcy estate has

a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent

monetary transfer."[42] Though listed as a core proceeding, the Supreme Court held that "the

Seventh Amendment entitles such a person to a trial by jury."[43] The only way for the bankruptcy

estate to avoid a jury trial was to assert a public right. Through a public right exception,

Congress "may assign their adjudication to an administrative agency with which a jury trial

would be incompatible, without violating the Seventh Amendment's injunction that jury trial is

to be preserved in suits at common law."[44] The *Granfinanciera* Court found that the fraudulent

conveyance actions were matters of private, not public, right because they are "quintessentially

suits at common law that more nearly resemble state-law contract claims."[45]

The *Stern* Court reasoned that the estate's state law counterclaim was like the fraudulent

conveyance claim discussed in *Granfianciera*, which are both "quintessentially suits at common

---

[39] Docket No. 4, at 6.

[40] *In re Kimball Hill, Inc.*, 480 B.R. at 900–01.

[41] 492 U.S. 33 (1989).

[42] *Id.* at 36.

[43] *Id.*

[44] *Id.* at 51 (quoting *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 455 (1977)) (internal quotation marks omitted).

[45] *Id.* at 56.

law that more nearly resemble state-law contract claims."[46]  The Court summarily rejected the

estate's claim that it had a public right to have its counterclaim heard and adjudicated by a

bankruptcy court, since the counterclaim clearly resembled a private right.[47]

In the years between *Granfinanciera* and *Stern*, "the authority of bankruptcy courts to

enter final judgments in fraudulent conveyance actions . . . [remained] unchallenged."[48]

However, the *Stern* decision muddied the waters of bankruptcy court jurisdiction by discussing a

fraudulent conveyance action in a case that did not contain such a claim.[49]  While "one can find

decisions supporting broad, narrow, and middle-of-the-road interpretations,"[50] most district and

bankruptcy courts around the country have read *Stern* narrowly, as having not disturbed the

bankruptcy courts' subject matter jurisdiction.[51]  Others have even held that a bankruptcy court's

---

[46] *Stern*, 131 S. Ct. at 2614 (quoting *Granfinanciera*, 492 U.S. at 56) (internal quotation marks omitted).

[47] *Id.* at 2614–15.

[48] *Cifelli v. Blue Star Residential, LLC (In re Miles)*, 477 B.R. 266, 271 (Bankr. N.D. Ga. 2012).

[49] *See In re Safety Harbor Resort & Spa*, 456 B.R. 703, 717 (Bankr. M.D. Fla. 2011) ("*Granfinanciera* did not hold that bankruptcy courts lack jurisdiction to enter final judgments on fraudulent conveyance claims.  In fact, the Supreme Court went to great lengths to emphasize that issue was not even before it in that case."); *see also Granfinanciera,* 492 U.S. at 50 ("We are not obliged to decide today whether bankruptcy courts may conduct jury trials in fraudulent conveyance suits brought by a trustee against a person who has not entered a claim against the estate, either in the rare procedural posture of this case or under the current statutory scheme."). *But cf.*, *In re Canopy Fin., Inc.*, 464 B.R. 770, 773 (Bankr. N.D. Ill. 2011) ("Thus, by likening the claim in question to the fraudulent conveyance claims in *Granfinanciera*, the *Stern* Court made clear that the Bankruptcy Court lacks constitutional authority to enter final judgment on the claims presented here.").

[50] *In re Citron*, No. 09-8125-JBR, 2011 WL 4711942, at *1 n.1 (Bankr. E.D.N.Y. Oct. 6, 2011).

[51] *See, e.g.*, *In re Blixseth*, 463 B.R. 896, 907 (Bankr. D. Mont. 2012) (finding that its earlier decision interpreting *Stern*, (*In re Blixseth*, No. 09-60452-7, 2011 WL 3274042 (Bankr. D. Mont. Aug. 1, 2011)), which deprived a bankruptcy court of subject matter jurisdiction to hear a fraudulent transfer claim, was "flawed"); *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 642 (Bankr. D. Del. 2012) (honoring *Stern*'s "express limitations and

ability to enter a final judgment on a fraudulent transfer claim remains entirely intact.[52]  Based

on the "narrow" holding language found in *Stern*, these courts have held that *Stern*'s invalidation

of § 157(b)(2)(C) as a core proceeding was not meant to "meaningfully change[] the division of

labor in the current statute."[53]

Some district and bankruptcy courts within the Tenth Circuit have addressed *Stern*'s

scope.  The majority of these courts have adopted a narrow view of *Stern*, finding that

"*Stern* does not impact the bankruptcy court's ability to enter a final judgment on any type of

core proceeding listed in the other subsections of 28 U.S.C. § 157(b)(2)."[54]

Some courts feel *Stern*'s discussion of *Granfinanciera* "clearly impli[es] that the

bankruptcy court lacks constitutional authority to enter a final judgment on [] fraudulent

---

assurances regarding the narrowness of the minimal breadth of the decision"); *Zazzali v. 1031 Exch. Grp. (In re DBSI, Inc.)*, 467 B.R. 767, 772 (Bankr. D. Del. 2012) (finding *Stern* should be read narrowly and noting that decisions across the country find the same).

[52] *Official Comm. of Unsecured Creditors of Appalachian Fuels, LLC v. Energy Coal Res., Inc. (In re Appalachian Fuels, LLC)*, 472 B.R. 731, 740 (E.D. Ky. 2012) (finding the *Stern* Court's clear intent was a limited holding and that a bankruptcy court may enter a final judgment on a state law fraudulent transfer claim under § 544 because it would be considered a core proceeding under the bankruptcy code); *In re Miles*, 477 B.R. at 270 (finding that a trustee's § 548 fraudulent conveyance action "is explicitly found in the Bankruptcy Code" and if *Stern* were not interpreted narrowly, "*no* court would have any basis to hear a Chapter 7 trustee's claim for relief to avoid and recover a fraudulent transfer").

[53] *Stern*, 131 S. Ct. at 2620.

[54] *In re Brooke Corp.*, No. 08-22786, 2012 Bankr. LEXIS 2296, at *23 (D. Kan. May 15, 2012); s*ee also Mercury Cos.*, 460 B.R. at 783; *Wadsworth v. Baker (In re Delafuente)*, No. 10-25220 MER, 2012 WL 1535848, at *2–3 (Bankr. D. Colo. Apr. 30, 2012); *Steinle v. Trico Real Estate, L.P. (In re CCI Funding I, LLC)*, No. 09-17437, 2012 Bankr. LEXIS 3754, at *22 (Bankr. D. Colo. Aug. 15, 2012).

conveyance claims,"[55] or, at the very least, make a bankruptcy court's jurisdiction over

fraudulent conveyance actions "constitutionally suspect."[56]

For most circuits this issue remains unsettled.[57]  The Seventh Circuit has found that

bankruptcy courts do not have subject matter jurisdiction to hear fraudulent conveyance

actions.[58]  The Ninth Circuit, in a more limited fashion, held that even if a bankruptcy court

cannot enter a final judgment under *Stern*, they still possess the ability to hear fraudulent transfer

claims and enter findings of fact and conclusions of law under § 157(c)(1).[59]

As this discussion demonstrates, reconciling *Stern*'s plain language that its holding is

"narrow" with its discussion of *Granfinanciera* can be troublesome.  Nevertheless, the Court is

persuaded that *Stern* is a "narrow" holding confined to its unique facts.[60]  As such, the Court

finds that the Stern did not remove "out of the purview of the bankruptcy court claims of a type

---

[55] *In re Heller Ehrman LLP*, 464 B.R. 348, 354 (N.D. Cal. 2011).

[56] *In re Teleservices Grp., Inc.*, 456 B.R. 318, 325 (Bankr. W.D. Mich. 2011).

[57] *In re Brooke Corp.*, 2012 Bankr. LEXIS 2296, at *23.

[58] *In re Ortiz*, 665 F.3d 906, 915 (7th Cir. 2011) (finding that core proceedings do not fit under § 157(c)(1)).

[59] *See In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 565 (9th Cir. 2012) (holding that *Granfinaciera* and *Stern* together bar bankruptcy judges from entering final judgments on fraudulent conveyance claims); *see also In re Miles*, 477 B.R. at 271–72 ("[E]ven if *Stern v. Marshall* prohibits the bankruptcy court from entering final judgment . . . the bankruptcy court is permitted to present findings of fact and conclusions of law to the district court."); *In re Canopy Fin., Inc.*, 464 B.R. at 775 (holding that even if *Stern* were interpreted broadly, a bankruptcy court possesses the authority to hear fraudulent transfer claims and enter proposed findings of fact and conclusions of law); *In re Heller Ehrman LLP*, 464 B.R. at 354–57 (holding that bankruptcy courts have statutory authority to enter findings of fact and conclusions of law in fraudulent transfer claims).

[60] *Stern*, 131 S. Ct. at 2620.

that routinely fall before it."[61]  Indeed, the Court finds it best to cause the least amount of

disturbance and preserve the division of labor that has existed between Article III courts and

bankruptcy courts for decades.[62]  This Court concludes, based on the clear language of *Stern*, that

"*Stern* and the Constitution do not preclude the bankruptcy court from entering final judgment in

a fraudulent conveyance action."[63]  Therefore, since the instant Adversary Proceeding contains

no counterclaims based on state law, by the narrow reading this Court adopts today, *Stern* is not

applicable to this matter.  Based on this conclusion, it follows that the bankruptcy court has

jurisdiction to enter final orders on all determined core claims—including fraudulent transfer

claims under § 157(b)(2)(H)—and proposed findings of fact and conclusions of law for all

determined non-core claims.

       As stated, the bankruptcy court will determine which claims are core pursuant to §

157(b)(3), since there is some question as to which of the Trustee's claims could accurately be

categorized as core.  Accordingly, Defendant's Motion to Withdraw is denied without prejudice,

and the bankruptcy court is instructed to proceed pursuant to § 157 and the terms of this Order.

III. CONCLUSION

        It is therefore,

       ORDERED that Defendants' Motion to Withdraw (Docket No. 2) is DENIED

WITHOUT PREJUDICE to it being re-raised after the bankruptcy court has determined which

claims are core and which are non-core and entered appropriate final orders and proposed

findings of fact and conclusions of law.

---

[61] *In re Miles*, 477 B.R. at 270.

[62] *Stern*, 131 S. Ct. at 2620.

[63] *Cifelli v. Mursalim (In re Miles)*, 481 B.R. 832, 838 (Bankr. N.D. Ga. 2012).

DATED March 27, 2013.

BY THE COURT

_____

TED STEWART
United States District Judge